MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
JORGE JUAREZ SANCHEZ, SANTOS
RODRIGUEZ GARCIA, CRISTOBAL
BADILLO, SERGIO GUADALUPE
PALAFOX, JORGE ARTURO CASTILLO
CEREZO, and KRIS SUTHAYABHORN,
*individually and on behalf of others similarly
situated,*

                              *Plaintiffs*,


              -against-


POTJANEE INC.    (D/B/A POTJANEE),
POTJANEE    AUTHENTIC    THAI
RESTAURANT INC.    (D/B/A POTJANEE),
THINAWAN MANEEPONG, POTJANEE
MANEEPONG,                CHIRAPHAT
KHEMDAENG, ARTHIT MANEEPONG, and
BHIMWALAN TANAJAM,

                              *Defendants.*
---------------------------------------------------------X

**COMPLAINT**


**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b) AND RULE 23
CLASS ACTION**


**ECF Case**

        Plaintiffs Jorge Juarez Sanchez, Santos Rodriguez Garcia, Cristobal Badillo, Sergio

Guadalupe Palafox, Jorge Arturo Castillo Cerezo, and Kris Suthayabhorn, individually and on

behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys,

Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Potjanee Inc.

(d/b/a Potjanee), Potjanee Authentic Thai Restaurant Inc. (d/b/a Potjanee), ("Defendant

Corporations"), Thinawan Maneepong, Potjanee Maneepong, Chiraphat Khemdaeng, Arthit

Maneepong, and Bhimwalan Tanajam, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.    Plaintiffs are former employees of Defendants Potjanee Inc. (d/b/a Potjanee), Potjanee Authentic Thai Restaurant Inc. (d/b/a Potjanee), Thinawan Maneepong, Potjanee Maneepong, Chiraphat Khemdaeng, Arthit Maneepong, and Bhimwalan Tanajam.

2.    Defendants own, operate, or control a Thai restaurant, located at 48 Carmine St, New York, NY 10014 under the name "Potjanee."

3.    Upon information and belief, individual Defendants Thinawan Maneepong, Potjanee Maneepong, Chiraphat Khemdaeng, Arthit Maneepong, and Bhimwalan Tanajam, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurant as a joint or unified enterprise.

4.    Plaintiffs were employees of Defendants.

5.    Plaintiffs were employed as delivery workers at the restaurant located at 48 Carmine St, New York, NY 10014.

6.    Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to dishwashing, cutting vegetables, cutting chicken and meats, bringing up all sorts of items from the basement for the owners, stocking items in the basement, cleaning the restaurant, the basement, the kitchen, the sidewalk, the walls and the floors, twisting and tying up cardboard boxes, taking out the garbage, going to the supermarket and shopping for items, preparing food, cleaning, sweeping and mopping, cutting vegetables, cooking rice, preparing sauces, cleaning rat

droppings, repairing the bathroom and taking out the mousetraps (hereafter the "non-tipped duties").

7.    At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

8.    Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9.    Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

10.    Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.    Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

12.    However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.    Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lower tip-credit rate (which they still failed to do).

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.     Plaintiffs seek certification of this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Thai restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

21.     Plaintiff Jorge Juarez Sanchez ("Plaintiff Juarez" or "Mr. Juarez") is an adult individual residing in Hudson County, New Jersey. Plaintiff Juarez was employed by Defendants at Potjanee from approximately January 2014 until on or about March 7, 2018.

22.     Plaintiff Santos Rodriguez Garcia ("Plaintiff Rodriguez" or "Mr. Rodriguez") is an adult individual residing in Hudson County, New Jersey. Plaintiff Rodriguez was employed by Defendants at Potjanee from approximately February 2013 until on or about January 2014.

23.     Plaintiff Cristobal Badillo ("Plaintiff Badillo" or "Mr. Badillo") is an adult individual residing in Bronx County, New York. Plaintiff Badillo was employed by Defendants at Potjanee from approximately November 2012 until on or about December 2015.

24.     Plaintiff Sergio Guadalupe Palafox ("Plaintiff Guadalupe" or "Mr. Guadalupe") is an adult individual residing in Kings County, New York. Plaintiff Guadalupe was employed by Defendants at Potjanee from approximately March 2011 until on or about January 15, 2018.

25.     Plaintiff Jorge Arturo Castillo Cerezo ("Plaintiff Castillo" or "Mr. Castillo") is an adult individual residing in Passaic County, New Jersey. Plaintiff Castillo was employed by Defendants at Potjanee from approximately May 2015 until on or about November 2017.

26.    Plaintiff Kris Suthayabhorn ("Plaintiff Suthayabhorn" or "Mr. Suthayabhorn") is an adult individual residing in Queens County, New York. Plaintiff Suthayabhorn was employed by Defendants at Potjanee from approximately December 2016 until on or about May 2017.

*Defendants*

27.    At all relevant times, Defendants owned, operated, or controlled a Thai restaurant, located at 48 Carmine St, New York, NY 10014 under the name "Potjanee."

28.    Upon information and belief, Potjanee Inc. (d/b/a Potjanee) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 48 Carmine St, New York, NY 10014.

29.    Upon information and belief, Potjanee Authentic Thai Restaurant Inc. (d/b/a Potjanee) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 48 Carmine St, New York, NY 10014.

30.    Defendant Thinawan Maneepong is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Thinawan Maneepong is sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Thinawan Maneepong possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.    Defendant Potjanee Maneepong is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Potjanee Maneepong is

sued individually in her capacity as owner, officer and/or agent of Defendant Corporations. Defendant Potjanee Maneepong possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.    Defendant Chiraphat Khemdaeng is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Chiraphat Khemdaeng is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Chiraphat Khemdaeng possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

33.    Defendant Arthit Maneepong is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Arthit Maneepong is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Arthit Maneepong possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.    Defendant Bhimwalan Tanajam is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Bhimwalan Tanajam is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Bhimwalan Tanajam possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

35.    Defendants operate a Thai restaurant located in the Greenwich Village section of Manhattan in New York City.

36.    Individual Defendants, Thinawan Maneepong, Potjanee Maneepong, Chiraphat Khemdaeng, Arthit Maneepong, and Bhimwalan Tanajam, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

37.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

38.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

39.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

40.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

41.    Upon information and belief, Individual Defendants Thinawan Maneepong, Potjanee Maneepong, Chiraphat Khemdaeng, Arthit Maneepong, and Bhimwalan Tanajam operate Defendant Corporations as either alter egos of  themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

    f)  intermingling assets and debts of their own with Defendant Corporations,

    g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

42.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

43.    In each year from 2012 to 2018, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

44.    In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

45.    Plaintiffs are former employees of Defendants who ostensibly were employed as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

46.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Jorge Juarez Sanchez*

47.    Plaintiff Juarez was employed by Defendants from approximately January 2014 until on or about March 7, 2018.

48.    Defendants ostensibly employed Plaintiff Juarez as a delivery worker.

49.    However, Plaintiff Juarez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

50.    Although Plaintiff Juarez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

51.    Plaintiff Juarez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

52.    Plaintiff Juarez's work duties required neither discretion nor independent judgment.

53.    From approximately January 2014 until on or about January 2018, Plaintiff Juarez worked as a delivery worker from approximately 11:00 a.m. until on or about 12:30 a.m., 6 days a week (typically 81 hours per week).

54.    From approximately January 2018 until on or about February 2018, Plaintiff Juarez worked as a delivery worker from approximately 12:00 p.m. until on or about 12:00 a.m., 3 days a week (typically 36 hours per week).

55.    From approximately February 2018 until on or about March 7, 2018, Plaintiff Juarez worked as a delivery worker from approximately 12:00 p.m. until on or about 12:00 a.m., 2 days a week (typically 24 hours per week).

56.    Throughout his employment, Defendants paid Plaintiff Juarez his wages in cash.

57.    From approximately January 2014 until on or about March 2014, Defendants paid Plaintiff Juarez a fixed salary of $55 per day.

58.    From approximately March 2014 until on or about April 2014, Defendants paid Plaintiff Juarez a fixed salary of $60 per day.

59.    From approximately April 2014 until on or about March 7, 2018, Defendants paid Plaintiff Juarez a fixed salary of $65 per day.

60.    Plaintiff Juarez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

61.    For example, Defendants required Plaintiff Juarez to work an additional 2 hours past his scheduled departure time every day, and did not pay him for the additional time he worked.

62.    Defendants never granted Plaintiff Juarez any breaks or meal periods of any kind.

63.    Plaintiff Juarez was never notified by Defendants that his tips were being included as an offset for wages.

64.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Juarez's wages.

65.    Defendants withheld a portion of Plaintiff Juarez's tips; specifically, Defendants pocketed 5% of Seamless and credit card tips.

66.    Plaintiff Juarez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

67.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Juarez regarding overtime and wages under the FLSA and NYLL.

68.    Defendants did not provide Plaintiff Juarez an accurate statement of wages, as required by NYLL 195(3).

69.    Defendants did not give any notice to Plaintiff Juarez, in English and in Spanish (Plaintiff Juarez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

70.    Defendants required Plaintiff Juarez to purchase "tools of the trade" with his own funds—including seven bicycles, two helmets, five vests, twelve sets of bicycle lights, three chains, three locks and bicycles' maintenance and repair.

*Plaintiff Santos Rodriguez Garcia*

71.   Plaintiff Rodriguez was employed by Defendants from approximately February 2013 until on or about January 2014.

72.   Defendants ostensibly employed Plaintiff Rodriguez as a delivery worker.

73.   However, Plaintiff Rodriguez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

74.   Although Plaintiff Rodriguez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

75.   Plaintiff Rodriguez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

76.   Plaintiff Rodriguez's work duties required neither discretion nor independent judgment.

77.   Throughout his employment with Defendants, Plaintiff Rodriguez regularly worked in excess of 40 hours per week.

78.   From approximately February 2013 until on or about January 2014, Plaintiff Rodriguez worked as a delivery worker from approximately 11:00 a.m. until on or about 12:00 a.m., 3 days a week and from approximately 11:00 a.m. until on or about 12:30 a.m., 2 days a week (typically 66 hours per week).

79.   Throughout his employment, Defendants paid Plaintiff Rodriguez his wages in cash.

80.   From approximately February 2013 until on or about January 2014, Defendants paid Plaintiff Rodriguez a fixed salary of $260 per week.

81.   Plaintiff Rodriguez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

82.    For example, Defendants required Plaintiff Rodriguez to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

83.    Defendants never granted Plaintiff Rodriguez any breaks or meal periods of any kind.

84.    Plaintiff Rodriguez was never notified by Defendants that his tips were being included as an offset for wages.

85.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rodriguez's wages.

86.    Plaintiff Rodriguez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

87.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rodriguez regarding overtime and wages under the FLSA and NYLL.

88.    Defendants did not provide Plaintiff Rodriguez an accurate statement of wages, as required by NYLL 195(3).

89.    Defendants did not give any notice to Plaintiff Rodriguez, in English and in Spanish (Plaintiff Rodriguez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

90.    Defendants required Plaintiff Rodriguez to purchase "tools of the trade" with his own funds—including a bicycle, sets of lights, a helmet, a raincoat, a vest, shoes and lock and chain.

*Plaintiff Cristobal Badillo*

91.    Plaintiff Badillo was employed by Defendants from approximately November 2012 until on or about December 2015.

- 14 -

92.    Defendants ostensibly employed Plaintiff Badillo as a delivery worker.

93.    However, Plaintiff Badillo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

94.    Although Plaintiff Badillo ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

95.    Plaintiff Badillo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

96.    Plaintiff Badillo's work duties required neither discretion nor independent judgment.

97.    Throughout his employment with Defendants, Plaintiff Badillo regularly worked in excess of 40 hours per week.

98.    From approximately November 2012 until on or about December 2015, Plaintiff Badillo worked as a delivery worker from approximately 11:00 a.m. until on or about 12:30 a.m., 3 days a week and from approximately 11:00 a.m. until on or about 1:00 a.m., 2 days a week (typically 68.5 hours per week).

99.    Throughout his employment, Defendants paid Plaintiff Badillo his wages in cash.

100.  From approximately November 2012 until on or about December 2015, Defendants paid Plaintiff Badillo a fixed salary of $325 per week ($65 per day).

101.  Plaintiff Badillo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

102.  For example, Defendants required Plaintiff Badillo to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

103.  Defendants never granted Plaintiff Badillo any breaks or meal periods of any kind.

104.  Plaintiff Badillo was never notified by Defendants that his tips were being included as an offset for wages.

105.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Badillo's wages.

106.  Defendants withheld a portion of Plaintiff Badillo's tips; specifically, Defendants pocketed 15% of all the tips customers paid him per day.

107.  Plaintiff Badillo was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

108.  Defendants required Plaintiff Badillo to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

109.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Badillo regarding overtime and wages under the FLSA and NYLL.

110.  Defendants did not provide Plaintiff Badillo an accurate statement of wages, as required by NYLL 195(3).

111.   Defendants did not give any notice to Plaintiff Badillo, in English and in Spanish (Plaintiff Badillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

112.   Defendants required Plaintiff Badillo to purchase "tools of the trade" with his own funds—including three bicycles, two helmets, a lock and chain, a vest, a raincoat, ten pairs of shoes, ten sets of lights, five pants per year, five shirts per year, two baskets, a bell, and bicycle maintenance and repairs.

*Plaintiff Sergio Guadalupe Palafox*

113.  Plaintiff Guadalupe was employed by Defendants from approximately March 2011 until on or about January 15, 2018.

114.  Defendants ostensibly employed Plaintiff Guadalupe as a delivery worker.

115.  However, Plaintiff Guadalupe was also required to spend a significant portion of his work day performing the non-tipped duties described above.

116.  Although Plaintiff Guadalupe ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

117.  Plaintiff Guadalupe regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

118.  Plaintiff Guadalupe's work duties required neither discretion nor independent judgment.

119.  Throughout his employment with Defendants, Plaintiff Guadalupe regularly worked in excess of 40 hours per week.

120.  From approximately March 2012 until on or about January 2017, Plaintiff Guadalupe worked as a delivery worker from approximately 11:00 a.m. until on or about 12:00 a.m., 4 days a week and from approximately 11:00 a.m. until on or about 12:30 a.m., 2 days a week (typically 79 hours per week).

121.  From approximately January 2017 until on or about January 15, 2018, Plaintiff Guadalupe worked as a delivery worker from approximately 11:00 a.m. until on or about 12:00 a.m., 3 days a week and from approximately 11:00 a.m. until on or about 12:30 a.m., 2 days a week (typically 66 hours per week).

122.  Throughout his employment, Defendants paid Plaintiff Guadalupe his wages in cash.

123. From approximately March 2012 until on or about July 2012, Defendants paid Plaintiff Guadalupe a fixed salary of $55 per day.

124. From approximately July 2012 until on or about January 2013, Defendants paid Plaintiff Guadalupe a fixed salary of $60 per day.

125. From approximately January 2013 until on or about January 15, 2018, Defendants paid Plaintiff Guadalupe a fixed salary of $65 per day.

126. Plaintiff Guadalupe's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

127. For example, Defendants required Plaintiff Guadalupe to work an additional 1 hour to 1 hour and a half past his scheduled departure time regularly, and did not pay him for the additional time he worked.

128. Defendants seldom ever granted Plaintiff Guadalupe any breaks or meal periods of any kind.

129. Plaintiff Guadalupe was never notified by Defendants that his tips were being included as an offset for wages.

130. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Guadalupe's wages.

131. Defendants withheld a portion of Plaintiff Guadalupe's tips; specifically, Defendants pocketed 5% of his tips (about $20-$30 per week).

132. Plaintiff Guadalupe was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

133.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guadalupe regarding overtime and wages under the FLSA and NYLL.

134.  Defendants did not provide Plaintiff Guadalupe an accurate statement of wages, as required by NYLL 195(3).

135.   Defendants did not give any notice to Plaintiff Guadalupe, in English and in Spanish (Plaintiff Guadalupe's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

136.   Defendants required Plaintiff Guadalupe to purchase "tools of the trade" with his own funds—including two bicycles and bicycles' maintenance and repairs.

*Plaintiff Jorge Arturo Castillo Cerezo*

137.  Plaintiff Castillo was employed by Defendants from approximately May 2015 until on or about November 2017.

138.  Defendants ostensibly employed Plaintiff Castillo as a delivery worker.

139.  However, Plaintiff Castillo was also required to spend a significant portion of his work day performing the non-tipped duties described above.

140.  Although Plaintiff Castillo ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

141.  Plaintiff Castillo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

142.  Plaintiff Castillo's work duties required neither discretion nor independent judgment.

143.  Throughout his employment with Defendants, Plaintiff Castillo regularly worked in excess of 40 hours per week.

144.  From approximately June 2015 until on or about November 2017, Plaintiff Castillo worked as a delivery worker from approximately 11:00 a.m. until on or about 12:30 a.m., 4 days a week and from approximately 4:30 p.m. until on or about 12:30 a.m., 2 days a week (typically 70 hours per week).

145.  Throughout his employment, Defendants paid Plaintiff Castillo his wages in cash.

146.  From approximately May 2015 until on or about November 2017, Defendants paid Plaintiff Castillo a fixed salary of $360 per week ($60 per day).

147.  Plaintiff Castillo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

148.  For example, Defendants required Plaintiff Castillo to start working 30 minutes prior to his scheduled start time and continue working 30 minutes to 1 hour past his scheduled departure time regularly, and did not pay him for the additional time he worked.

149.  Plaintiff Castillo was never notified by Defendants that his tips were being included as an offset for wages.

150.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Castillo's wages.

151.  Defendants withheld a portion of Plaintiff Castillo's tips; specifically, Defendants pocketed 25% of his daily tips (roughly $20 out of $80 per day) and 5% of all the tips received through Grubhub and Seamless.

152.  Plaintiff Castillo was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

153.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Castillo regarding overtime and wages under the FLSA and NYLL.

154.  Defendants did not provide Plaintiff Castillo an accurate statement of wages, as required by NYLL 195(3).

155.  Defendants did not give any notice to Plaintiff Castillo, in English and in Spanish (Plaintiff Castillo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

156.  Defendants required Plaintiff Castillo to purchase "tools of the trade" with his own funds—including three bicycles, one electric bicycle, a helmet, a lock and chain, and maintenance and repairs.

*Plaintiff Kris Suthayabhorn*

157.  Plaintiff Suthayabhorn was employed by Defendants from approximately December 2016 until on or about May 2017.

158.  Defendants ostensibly employed Plaintiff Suthayabhorn as a delivery worker.

159.  However, Plaintiff Suthayabhorn was also required to spend a significant portion of his work day performing the non-tipped duties described above.

160.  Although Plaintiff Suthayabhorn ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

161.  Plaintiff Suthayabhorn regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

162.  Plaintiff Suthayabhorn's work duties required neither discretion nor independent judgment.

163. Throughout his employment with Defendants, Plaintiff Suthayabhorn regularly worked in excess of 40 hours per week.

164. From approximately December 2016 until on or about May 2017, Plaintiff Suthayabhorn worked as a delivery worker from approximately 11:00 a.m. until on or about 11:00 p.m. to 12:00 a.m., 5 days a week (typically 60 to 65 hours per week).

165. Throughout his employment, Defendants paid Plaintiff Suthayabhorn his wages in cash.

166. From approximately December 2016 until on or about May 2017, Defendants paid Plaintiff Suthayabhorn a fixed salary of $60 per day.

167. Plaintiff Suthayabhorn's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

168. For example, Defendants required Plaintiff Suthayabhorn to work up to 1 hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

169. Defendants never granted Plaintiff Suthayabhorn any breaks or meal periods of any kind.

170. Plaintiff Suthayabhorn was never notified by Defendants that his tips were being included as an offset for wages.

171. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Suthayabhorn's wages.

172. Defendants withheld a portion of Plaintiff Suthayabhorn's tips; specifically, Defendants pocketed 5% of his tips (about $20 to $30 per week).

173.  Plaintiff Suthayabhorn was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

174.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Suthayabhorn regarding overtime and wages under the FLSA and NYLL.

175.  Defendants did not provide Plaintiff Suthayabhorn an accurate statement of wages, as required by NYLL 195(3).

176.  Defendants did not give any notice to Plaintiff Suthayabhorn, in English and in Thai (Plaintiff Suthayabhorn's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

177.  Defendants required Plaintiff Suthayabhorn to purchase "tools of the trade" with his own funds—including bicycle maintenance and repairs.

*Defendants' General Employment Practices*

178.  At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

179.  Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked...

180.  Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

181. Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

182. Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers. These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-tipped duties.

183. These Plaintiffs and all other tipped workers were paid at a rate that was lower than the required tip-credit rate by Defendants.

184. However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

185. New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

186. Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

187. In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower

than the required tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

188.  Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

189.  Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

190.  Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

191.  As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

192.  Defendants unlawfully misappropriated charges purported to be gratuities received by Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

193.  Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

194.  Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

195.  Plaintiffs were paid their wages in cash.

196.  Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

197.  Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

198.  Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

199.  Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

200.  Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

201.  Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the

minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the

employer; the name of the employer; any "doing business as" names used by the employer; the

physical address of the employer's main office or principal place of business, and a mailing address

if different; and the telephone number of the employer, as required by New York Labor Law

§195(1).

### FLSA COLLECTIVE ACTION CLAIMS

202.  Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated

damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on

behalf of all similarly situated persons (the "FLSA and Rule 23Class members"), i.e., persons who

are or were employed by Defendants or any of them, on or after the date that is three years before

the filing of the complaint in this case (the "FLSA Class Period").

203.  At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class

were similarly situated in that they had substantially similar job requirements and pay provisions,

and have been subject to Defendants' common practices, policies, programs, procedures, protocols

and plans including willfully failing and refusing to pay them the required minimum wage,

overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per

workweek under the FLSA, and willfully failing to keep records required by the FLSA.

204.  The claims of Plaintiffs stated herein are similar to those of the other employees.

### FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

205.    Plaintiffs sue on their own behalf and on behalf of a class of persons similarly

situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

206.    Plaintiffs bring their New York Labor Law minimum wage, wage deduction and

liquidated damages claims on behalf of all persons who were employed by Defendants in the State

of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

207.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

208.    There are questions of law and fact common to the Class including:

a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)  Whether Defendants failed and/or refused to pay Plaintiffs the minimum wage within the meaning of the New York Labor Law;

e)  Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

f)  At what common rate, or rates subject to common methods of calculation, were Defendants required to pay the class members for their work; and

g)  What were the common conditions of employment and in the workplace, such as recordkeeping, clock- in procedures, breaks, and policies and

practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

209.   The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

210.   The representative parties will fairly and adequately protect the interests of the Class and had no interests antagonistic to the class. The named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

211.   The common questions of law and fact predominate over questions affecting only individual members.

212.   A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

213.   Defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

214.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

215.  At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

216.  At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

217.  Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

218.  Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 Class Members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

219.  Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

220.  Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

221.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

222.  Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 Class Members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

223.  Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class Members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

224.  Plaintiffs (and the FLSA and Rule 23 Class Members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

225.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

226.  At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

227.  Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage.

228.  Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

229.  Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

**OF THE NEW YORK STATE LABOR LAW**

230. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

231. Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

232. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

233. Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

234. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

235. Defendants failed to pay Plaintiffs (and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

236. Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members) an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

237. Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

238.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

239.  Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 class members) with a written notice, in English, Spanish and Thai (Plaintiffs' primary languages), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

240.  Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

241.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

242.  With each payment of wages, Defendants failed to provide Plaintiffs (and the FLSA and Rule 23 class members) with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as

part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

243.  Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

244.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

245.  Defendants required Plaintiffs (and the FLSA and Rule 23 class members) to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

246.  Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

247.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

248.  At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

249.  New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the

gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

250.  Defendants unlawfully misappropriated a portion of Plaintiffs' (and the FLSA and Rule 23 class members') tips that were received from customers.

251.  Defendants knowingly and intentionally retained a portion of Plaintiffs' (and the FLSA and Rule 23 class members') tips in violations of the NYLL and supporting Department of Labor Regulations.

252.  Plaintiffs (and the FLSA and Rule 23 class members) were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class Members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class Members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule

23 Class Members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA and Rule 23 Class Members;

(f)    Awarding Plaintiffs and the FLSA and Rule 23 Class Members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA and Rule 23 Class Members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 Class Members;

(i)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 Class Members;

(j)    Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs and the FLSA and Rule 23 Class Members;

(k)    Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA and Rule 23 Class Members' compensation, hours, wages and any deductions or credits taken against wages;

(l)    Declaring that Defendants' violations of the provisions of the NYLL and Spread of Hours Order were willful as to Plaintiffs and the FLSA and Rule 23 Class Members;

(m)    Awarding Plaintiffs and the FLSA and Rule 23 Class Members damages for the

amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(n)      Awarding Plaintiffs and the FLSA and Rule 23 Class Members damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(o)      Awarding Plaintiffs and the FLSA and Rule 23 Class Members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(p)      Awarding Plaintiffs and the FLSA and Rule 23 Class Members pre-judgment and post-judgment interest as applicable;

(q)      Awarding Plaintiffs and the FLSA and Rule 23 Class Members the expenses incurred in this action, including costs and attorneys' fees;

(r)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(s)      All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       March 26, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
       Michael Faillace [MF-8436]
       60 East 42nd Street, Suite 4510
       New York, New York 10165
       Telephone: (212) 317-1200
       Facsimile: (212) 317-1620
       *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 8, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Cristobal Badillo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     8 de Marzo 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 8, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      **Jorge Arturo Castillo Cerezo**

                                    Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

Date / Fecha:                       08 de marzo de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

March 8, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              <u>Jorge Juarez Sanchez</u>

Legal Representative / Abogado:    <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:          _____

Date / Fecha:               <u>08 de marzo de 2018</u>

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

March 8, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Kris Suthayabhorn

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     08 de marzo de 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

March 8, 2018

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                    Santos Rodriguez Garcia

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:                _____

Date / Fecha:                     March 8, 2018

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

March 8, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Sergio Guadalupe Palafox

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     08 de marzo de 2018

*Certified as a minority-owned business in the State of New York*