UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JORGE JUAREZ SANCHEZ, SANTOS
RODRIGUEZ GARCIA, CRISTOBAL
BADILLO, SERGIO GUADALUPE
PALAFOX, JORGE ARTURO CASTILLO
CEREZO, and KRIS SUTHAYABHORN,
individually and on behalf of others
similarly situated,

               Plaintiffs,

        -v.-

POTJANEE INC. (D/B/A POTJANEE),
POTJANEE AUTHENTIC THAI
RESTAURANT INC. (D/B/A
POTJANEE), THINAWAN
MANEEPONG, POTJANEE
MANEEPONG, ARTHIT MANEEPONG,
and BHIMWALAN TANAJAM,

               Defendants.

18 Civ. 2664 (KPF)

JUDGMENT

KATHERINE POLK FAILLA, District Judge:

On March 26, 2018, this action was commenced by Plaintiffs' filing of the

complaint.  (Dkt. No. 1).  The summons and complaint in this action having

been duly served on the above-named defendants Potjanee Inc. (d/b/a

Potjanee), Potjanee Authentic Thai Restaurant Inc. (d/b/a Potjanee), Thinawan

Maneepong, Potjanee Maneepong, Arthit Maneepong and Bhimwalan Tanajam,

and said Defendants having failed to plead or otherwise defend in this action,

and said default having been duly noted, and upon the annexed declaration of

default judgment,

NOW, on motion of Plaintiffs, by their attorneys Michael Faillace &

Associates, P.C., it is hereby ORDERED, ADJUDGED AND DECREED:

That the Plaintiffs have judgment jointly and severally against the Defendants Potjanee Authentic Thai Restaurant Inc. (d/b/a Potjanee), Thinawan Maneepong, Potjanee Maneepong, Arthit Maneepong and Bhimwalan Tanajam, in the amount of $1,227,512.47, including compensatory damages and permissible liquidated damages and prejudgment interest, plus post judgment interest as provided in 28 U.S.C. § 1961(a).

That the Plaintiffs are awarded attorney's fees in the amount of $3,150.00 and costs in the amount of $1,956.00,

That the Plaintiffs are awarded pre-judgment interest, at the rate of 9% from March 26, 2012, until the entry of judgment on December 11, 2018, in the amount of $149,196.64, as provided in N.Y.C.P.L.R. §§ 5001, 5004.

That if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgement shall automatically increase by fifteen percent, as required by N.Y.L.L. § 198(4).

This judgment does not apply to Chiraphat Khemdaeng, whom the Court dismissed from this action on December 10, 2018.

SO ORDERED.

Dated:       December 11, 2018
             New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

To:

POTJANEE AUTHENTIC THAI RESTAURANT INC. (D/B/A POTJANEE)
48 Carmine St.
New York, NY 10014

THINAWAN MANEEPONG
48 Carmine St.
New York, NY 10014

POTJANEE MANEEPONG
48 Carmine St.
New York, NY 10014

ARTHIT MANEEPONG
48 Carmine St.
New York, NY 10014

BHIMWALAN TANAJAM
48 Carmine St.
New York, NY 10014

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

JORGE JUAREZ SANCHEZ, SANTOS RODRIGUEZ
GARCIA, CRISTOBAL BADILLO, SERGIO
GUADALUPE PALAFOX, JORGE ARTURO
CASTILLO CEREZO, and KRIS SUTHAYABHORN,
*individually and on behalf of others similarly situated,*

           *Plaintiffs*,

     -against-

POTJANEE INC. (D/B/A POTJANEE), POTJANEE
AUTHENTIC THAI RESTAURANT INC. (D/B/A
POTJANEE), THINAWAN MANEEPONG,
POTJANEE MANEEPONG, CHIRAPHAT
KHEMDAENG, ARTHIT MANEEPONG, and
BHIMWALAN TANAJAM,

           *Defendants.*

-------------------------------------------------------------------X

18-CV-02664-KPF
DECLARATION OF
MICHAEL FAILLACE, ESQ.
IN SUPPORT OF
PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT

Michael Faillace, an attorney duly admitted to practice in New York and in this Court,

affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.   I represent the Plaintiffs Jorge Juarez Sanchez, Santos Rodriguez Garcia,

Cristobal Badillo, Sergio Guadalupe Palafox, Jorge Arturo Castillo Cerezo, and Kris

Suthayabhorn ("Plaintiffs"), in this lawsuit for unpaid wages, liquidated damages, and

attorneys' fees under the FLSA and New York Labor Law and regulations.

2.   I submit this affirmation in support of Plaintiffs' application for a default

judgment against defendants Potjanee Inc. (d/b/a Potjanee), Potjanee Authentic Thai

Restaurant Inc. (d/b/a Potjanee), Thinawan Maneepong, Potjanee Maneepong, Arthit

Maneepong, and Bhimwalan Tanajam (collectively, "Defendants") pursuant to Fed. R.

Civ. P. 55(b)(2) and Local Rule 55.2(b).

## Procedural History

3.     Plaintiffs commenced this action by filing the Complaint (and associated documents) on March 26, 2018. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

4.     This is an action for unpaid minimum and overtime wages, spread of hours pay, unlawful deductions from tips, liquidated damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. §§ 201, *et seq.*, the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. *See* **Exhibit A**, generally, Complaint, for description of the nature of the claims.

5.     The court has subject matter jurisdiction of the Plaintiffs' federal claims pursuant to 29 U.S.C. §§ 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York State law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction). *See* **Exhibit A**.

6.     Defendant Potjanee Inc. (d/b/a Potjanee) was served with process on June 14, 2018. Defendant Potjanee Authentic Thai Restaurant Inc. (d/b/a Potjanee) was served with process on June 14, 2018. Defendant Thinawan Maneepong was served with process on June 14, 2018. Defendant Potjanee (a.k.a. Potsanee) Maneepong was served with process on June 14, 2018. Defendant Arthit Maneepong was served with process on June 14, 2018. Defendant Bhimwalan Tanajam was served with process on June 14, 2018. True and correct copies of the proof of service for Defendants Potjanee Inc. (d/b/a Potjanee), Potjanee Authentic Thai Restaurant Inc. (d/b/a Potjanee) and Individual Defendants Thinawan Maneepong, Potjanee Maneepong, Arthit Maneepong and

2

Bhimwalan Tanajam are attached hereto as **Exhibit B**, **Exhibit C**, **Exhibit D**, **Exhibit E**, **Exhibit F**, **and Exhibit G**, respectively.

7.      Defendants did not answer or otherwise respond to the Complaint.

8.      Defendants Thinawan Maneepong, Potjanee Maneepong, Arthit Maneepong, and Bhimwalan Tanajam are neither infants nor incompetents.

9.      Defendants Thinawan Maneepong, Potjanee Maneepong, Arthit Maneepong, and Bhimwalan Tanajam are not in the active service of the United States military.

10.     Plaintiffs moved for entry of default on August 3, 2018. The Clerk of the Court then noted defaults against Potjanee Inc. (d/b/a Potjanee), Potjanee Authentic Thai Restaurant Inc. (d/b/a Potjanee), Thinawan Maneepong, Potjanee Maneepong, Arthit Maneepong, and Bhimwalan Tanajam on August 6, 2018. True and correct copies of the Clerk's Certificates of Default are attached hereto as **Exhibit H, Exhibit I, Exhibit J, Exhibit K, Exhibit L, and Exhibit M**.

11.     The declarations of Jorge Juarez Sanchez, Santos Rodriguez Garcia, Cristobal Badillo, Sergio Guadalupe Palafox, Jorge Arturo Castillo Cerezo, and Kris Suthayabhorn in support of this motion for default judgment are annexed as **Exhibit N, Exhibit O, Exhibit P, Exhibit Q, Exhibit R,** and **Exhibit S,** respectively.

### Statement of Facts Supporting Entry of Judgment

12.     As alleged in the Complaint and as stated in Plaintiffs' declarations, Defendants owned, operated, and controlled a Thai Restaurant located at 48 Carmine St, New York, NY 10014, under the name "Potjanee". **Exhibit A** ¶ 2; **Exhibit N** ¶ 4; **Exhibit O** ¶ 4; **Exhibit P** ¶ 4; **Exhibit Q** ¶ 4; **Exhibit R** ¶ 4; **Exhibit S** ¶ 4.

3

13.     Plaintiffs are former employees of Defendants. **Exhibit A ¶¶ 1, 45; Exhibit N ¶ 3; Exhibit O ¶ 3; Exhibit P ¶ 3; Exhibit Q ¶ 3; Exhibit R ¶ 3; Exhibit S ¶** 3.

14.     Defendants had the power to hire and fire Plaintiffs, controlled Plaintiffs' terms and conditions of employment, and determined the rate and method of Plaintiffs' compensation. **Exhibit A ¶ 42; Exhibit N ¶ 5; Exhibit O ¶ 5; Exhibit P ¶ 5; Exhibit Q ¶** 5; **Exhibit R ¶ 5; Exhibit S ¶** 5.

15.     Defendants had employees who handled and used goods that were produced outside the State of New York and travelled through interstate commerce. **Exhibit ¶ 44,** 51, 75, 95, 117, 141, 161; **Exhibit N ¶ 11; Exhibit O ¶ 11; Exhibit P ¶ 11; Exhibit Q ¶** 11; **Exhibit R ¶ 10; Exhibit S ¶** 11.

16.     In each year from 2012 until 2018, Defendants had a gross volume of sales that exceeded $500,000 **Exhibit A ¶ 43; Exhibit N ¶ 12; Exhibit O ¶ 12; Exhibit P ¶** 12; **Exhibit Q ¶ 12; Exhibit R ¶ 11; Exhibit S ¶** 12.

17.     Defendants regularly required Plaintiffs to work more than 40 hours per week without paying them minimum wage compensation and/or overtime compensation. **Exhibit A ¶¶ 7, 17, 178; Exhibit N ¶¶ 13-20; Exhibit O ¶¶ 13-16; Exhibit P ¶¶ 13-16; Exhibit Q ¶¶ 13-19; Exhibit R ¶¶ 12-15; Exhibit S ¶¶ 13-16.**

### Plaintiff Jorge Juarez Sanchez

18.     Plaintiff Jorge Juarez Sanchez ("Plaintiff Juarez") was employed by Defendants as a delivery worker from approximately January 2014 until on or about March 7, 2018. **Exhibit A ¶¶ 21, 47-48; Exhibit N ¶¶ 8-9.**

19.     Plaintiff Juarez was also required to spend a significant portion of his work day performing non-tip duties such as dishwashing, cutting vegetables, cutting chicken and

4

meats, bringing up all sorts of items from the basement for the owners, stocking items in the basement, cleaning the restaurant, the basement, the kitchen, the sidewalk, the walls and the floors, twisting and tying up cardboard boxes, taking out the garbage, going to the supermarket and shopping for items, preparing food, cleaning, sweeping and mopping, cooking rice, preparing sauces, cleaning rat droppings, repairing the bathroom and taking out the mousetraps. **Exhibit A** ¶ 6; **Exhibit N** ¶ 9.

20.     Plaintiff Juarez's work did not require discretion or independent judgment. **Exhibit A** ¶ 52; **Exhibit N** ¶ 10.

21.     From approximately January 2014 until on or about January 2018, Plaintiff Juarez worked as a delivery worker from approximately 11:00 a.m. until on or about 12:30 a.m., 6 days a week (typically 81 hours per week). **Exhibit A** ¶ 53; **Exhibit N** ¶ 14.

22.     From approximately January 2018 until on or about February 2018, Plaintiff Juarez worked as a delivery worker from approximately 12:00 p.m. until on or about 12:00 a.m., 3 days a week (typically 36 hours per week). **Exhibit A** ¶ 54; **Exhibit N** ¶ 15.

23.     From approximately February 2018 until on or about March 7, 2018, Plaintiff Juarez worked as a delivery worker from approximately 12:00 p.m. until on or about 12:00 a.m., 2 days a week (typically 24 hours per week).  **Exhibit A** ¶ 55; **Exhibit N** ¶ 16.

24.     Throughout Plaintiff Juarez's entire employment, Defendants paid him his wages in cash.  **Exhibit A** ¶ 56; **Exhibit N** ¶ 17.

25.     From approximately January 2014 until on or about March 2014, Defendants paid Plaintiff Juarez a fixed salary of $55 per day. **Exhibit A** ¶ 57; **Exhibit N** ¶ 18.

26.     From approximately March 2014 until on or about April 2014, Defendants paid Plaintiff Juarez a fixed salary of $60 per day. **Exhibit A ¶ 58; Exhibit N ¶ 19.**

27.     From approximately April 2014 until on or about March 7, 2018, Defendants paid Plaintiff Juarez a fixed salary of $65 per day. **Exhibit A ¶ 59; Exhibit N ¶ 20.**

28.     Plaintiff Juarez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. **Exhibit A ¶ 60; Exhibit N ¶ 23.**

29.     For example, Defendants required Plaintiff Juarez to work an additional 2 hours past his scheduled departure time every day, and did not pay him for the additional time he worked. **Exhibit A ¶ 61.**

30.     Defendants did not provide Plaintiff Juarez with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL § 195(1). **Exhibit A ¶ 69; Exhibit N ¶ 29.**

31.     Further, Defendants did not provide Plaintiff Juarez with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all his hours worked. **Exhibit A ¶ 68; Exhibit N ¶ 26.**

32.     No notification, either in the form of posted notices or others means, was ever given to Plaintiff Juarez regarding overtime and minimum wages under the FLSA and NYLL. **Exhibit A ¶ 67; Exhibit N ¶ 31.**

### **Santos Rodriguez Garcia**

33.     Plaintiff Santos Rodriguez Garcia ("Plaintiff Rodriguez") was employed by Defendants as a delivery worker from approximately February 2013 until on or about January 2014. **Exhibit A ¶ 22, 71-72; Exhibit O ¶¶ 8-9.**

34.     Plaintiff Rodriguez was also required to spend a significant portion of his work day performing non-tip duties such as dishwashing, cutting vegetables, cutting chicken and meats, bringing up all sorts of items from the basement for the owners, stocking items in the basement, cleaning the restaurant, the basement, the kitchen, the sidewalk, the walls and the floors, twisting and tying up cardboard boxes, taking out the garbage, going to the supermarket and shopping for items, preparing food, cleaning, sweeping and mopping, cooking rice, preparing sauces, cleaning rat droppings, repairing the bathroom and taking out the mousetraps. **Exhibit A** ¶ 6; **Exhibit O** ¶ 9.

35.     Plaintiffs Rodriguez's work did not require discretion or independent judgment. **Exhibit A** ¶ 76; **Exhibit O** ¶ 10.

36.     From approximately February 2013 until on or about January 2014, Plaintiff Rodriguez worked as a delivery worker from approximately 11:00 a.m. until on or about 12:00 a.m., 3 days a week and from approximately 11:00 a.m. until on or about 12:30 a.m., 2 days a week (typically 66 hours per week). **Exhibit A** ¶ 78; **Exhibit O** ¶ 14.

37.     Throughout Plaintiff Rodriguez's entire employment, Defendants paid him his wages in cash.  **Exhibit A** ¶ 79; **Exhibit O** ¶ 15.

38.     From approximately February 2013 until on or about January 2014, Defendants paid Plaintiff Rodriguez a fixed salary of $260 per week. **Exhibit A** ¶ 80; **Exhibit O** ¶ 16.

39.     Plaintiff Rodriguez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. **Exhibit A** ¶ 81; **Exhibit O** ¶ 19.

40.    For example, Defendants required Plaintiff Rodriguez to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked. **Exhibit A ¶** 82.

41.    Defendants did not provide Plaintiff Rodriguez with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL § 195(1). **Exhibit A ¶** 89; **Exhibit O ¶** 25.

42.    Further, Defendants did not provide Plaintiff Rodriguez with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked. **Exhibit A ¶** 88; **Exhibit O ¶** 22.

43.    No notification, either in the form of posted notices or others means, was ever given to Plaintiff Rodriguez regarding overtime and minimum wages under the FLSA and NYLL. **Exhibit A ¶** 87; **Exhibit O ¶** 24.

**Cristobal Badillo**

44.    Plaintiff Cristobal Badillo ("Plaintiff Badillo") was employed by Defendants as a delivery worker from approximately November 2012 until on or about December 2015. **Exhibit A ¶¶** 23, 91-92; **Exhibit P ¶¶** 8-9.

45.    Plaintiff Badillo was also required to spend a significant portion of his work day performing non-tip duties such as dishwashing, cutting vegetables, cutting chicken and meats, bringing up all sorts of items from the basement for the owners, stocking items in the basement, cleaning the restaurant, the basement, the kitchen, the sidewalk, the walls and the floors, twisting and tying up cardboard boxes, taking out the garbage, going to the supermarket and shopping for items, preparing food, cleaning, sweeping and mopping,

cooking rice, preparing sauces, cleaning rat droppings, repairing the bathroom and taking out the mousetraps. **Exhibit A** ¶ 6; **Exhibit P** ¶ 9.

46.     Plaintiffs Badillo's work did not require discretion or independent judgment. **Exhibit A** ¶ 96; **Exhibit P** ¶ 10.

47.     From approximately November 2012 until on or about December 2015, Plaintiff Badillo worked as a delivery worker from approximately 11:00 a.m. until on or about 12:30 a.m., 3 days a week and from approximately 11:00 a.m. until on or about 1:00 a.m., 2 days a week (typically 68.5 hours per week). **Exhibit A** ¶ 98; **Exhibit P** ¶ 14.

48.     Throughout Plaintiff Badillo's entire employment, Defendants paid him his wages in cash. **Exhibit A** ¶ 99; **Exhibit P** ¶ 15.

49.     From approximately November 2012 until on or about December 2015, Defendants paid Plaintiff Badillo a fixed salary of $325 per week ($65 per day). **Exhibit A** ¶ 100; **Exhibit P** ¶ 16.

50.     Plaintiff Badillo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. **Exhibit A** ¶ 101; **Exhibit P** ¶ 19.

51.     Defendants did not provide Plaintiff Badillo with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL § 195(1). **Exhibit A** ¶ 111; **Exhibit P** ¶ 25.

52.     Further, Defendants did not provide Plaintiff Badillo with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked. **Exhibit A** ¶ 110; **Exhibit P** ¶ 22.

53.     No notification, either in the form of posted notices or others means, was ever given to Plaintiff Badillo regarding overtime and minimum wages under the FLSA and NYLL. **Exhibit A ¶ 109; Exhibit P ¶ 24.**

### Sergio Guadalupe Palafox

54.     Plaintiff Sergio Guadalupe Palafox ("Plaintiff Guadalupe") was employed by Defendants as a delivery worker from approximately March 2011 until on or about January 15, 2018. **Exhibit A ¶ 24, 113-114; Exhibit Q ¶¶ 8-9.**

55.     Plaintiff Guadalupe was also required to spend a significant portion of his work day performing non-tip duties such as dishwashing, cutting vegetables, cutting chicken and meats, bringing up all sorts of items from the basement for the owners, stocking items in the basement, cleaning the restaurant, the basement, the kitchen, the sidewalk, the walls and the floors, twisting and tying up cardboard boxes, taking out the garbage, going to the supermarket and shopping for items, preparing food, cleaning, sweeping and mopping, cooking rice, preparing sauces, cleaning rat droppings, repairing the bathroom and taking out the mousetraps. **Exhibit A ¶ 6; Exhibit Q ¶ 9.**

56.     Plaintiff Guadalupe's work did not require discretion or independent judgment. **Exhibit A ¶ 118; Exhibit Q ¶ 10.**

57.     From approximately March 2012 until on or about January 2017, Plaintiff Guadalupe worked as a delivery worker from approximately 11:00 a.m. until on or about 12:00 a.m., 4 days a week and from approximately 11:00 a.m. until on or about 12:30 a.m., 2 days a week (typically 79 hours per week). **Exhibit A ¶ 120; Exhibit Q ¶ 14.**

58.     From approximately January 2017 until on or about January 15, 2018, Plaintiff Guadalupe worked as a delivery worker from approximately 11:00 a.m. until on or about

12:00 a.m., 3 days a week and from approximately 11:00 a.m. until on or about 12:30 a.m., 2 days a week (typically 66 hours per week). **Exhibit A ¶ 121; Exhibit Q ¶ 15.**

59.    Throughout Plaintiff Juarez's entire employment, Defendants paid him his wages in cash.  **Exhibit A ¶ 122; Exhibit Q ¶ 16.**

60.    From approximately March 2012 until on or about July 2012, Defendants paid Plaintiff Guadalupe a fixed salary of $55 per day. **Exhibit A ¶ 123; Exhibit Q ¶ 17.**

61.    From approximately July 2012 until on or about January 2013, Defendants paid Plaintiff Guadalupe a fixed salary of $60 per day. **Exhibit A ¶ 124; Exhibit Q ¶ 18.**

62.    From approximately January 2013 until on or about January 15, 2018, Defendants paid Plaintiff Guadalupe a fixed salary of $65 per day. **Exhibit A ¶ 125; Exhibit Q ¶ 19.**

63.    Plaintiff Guadalupe's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. **Exhibit A ¶ 126; Exhibit Q ¶ 22.**

64.    Defendants did not provide Plaintiff Guadalupe with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL § 195(1).   **Exhibit A ¶ 135; Exhibit Q ¶ 28.**

65.    Further, Defendants did not provide Plaintiff Guadalupe with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all his hours worked. **Exhibit A ¶ 134; Exhibit Q ¶ 25.**

66.    No notification, either in the form of posted notices or others means, was ever given to Plaintiff Guadalupe regarding overtime and minimum wages under the FLSA and NYLL. **Exhibit A ¶ 133; Exhibit Q ¶ 27.**

<u>**Jorge Arturo Castillo Cerezo**</u>

67.     Plaintiff Jorge Arturo Castillo Cerezo ("Plaintiff Castillo") was employed by Defendants as a delivery worker from approximately June 2015 until on or about November 2017. **Exhibit R ¶¶** 7-8.

68.     Plaintiff Castillo was also required to spend a significant portion of his work day performing non-tip duties such as dishwashing, cutting vegetables, cutting chicken and meats, bringing up all sorts of items from the basement for the owners, stocking items in the basement, cleaning the restaurant, the basement, the kitchen, the sidewalk, the walls and the floors, twisting and tying up cardboard boxes, taking out the garbage, going to the supermarket and shopping for items, preparing food, cleaning, sweeping and mopping, cooking rice, preparing sauces, cleaning rat droppings, repairing the bathroom and taking out the mousetraps. **Exhibit A ¶** 6, **Exhibit R ¶** 8.

69.     Plaintiff Castillo's work did not require discretion or independent judgment. **Exhibit A ¶** 142; **Exhibit R ¶** 9.

70.     From approximately June 2015 until on or about November 2017, Plaintiff Castillo worked as a delivery worker from approximately 11:00 a.m. until on or about 12:30 a.m., 4 days a week and from approximately 4:30 p.m. until on or about 12:30 a.m., 2 days a week (typically 70 hours per week). **Exhibit A ¶** 144, **Exhibit R ¶** 13.

71.     Throughout Plaintiff Castillo's entire employment, Defendants paid him his wages in cash.  **Exhibit A ¶** 145, **Exhibit R ¶** 14.

72.     From approximately June 2015 until on or about November 2017, Defendants paid Plaintiff Castillo a fixed salary of $360 per week ($60 per day). **Exhibit R ¶** 15.

73.     Plaintiff Castillo's pay did not vary even when he was required to stay later or work a longer day than his usual schedule. **Exhibit A ¶** 147; **Exhibit R ¶** 18.

74. Defendants did not provide Plaintiff Castillo with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL § 195(1). **Exhibit A ¶ 155; Exhibit R ¶ 24.**

75. Further, Defendants did not provide Plaintiff Castillo with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all his hours worked. **Exhibit A ¶ 154; Exhibit R ¶ 21.**

76. No notification, either in the form of posted notices or others means, was ever given to Plaintiff Castillo regarding overtime and minimum wages under the FLSA and NYLL. **Exhibit A ¶ 153; Exhibit R ¶ 23.**

## Kris Suthayabhorn

77. Plaintiff Kris Suthayabhorn ("Plaintiff Suthayabhorn") was employed by Defendants as a delivery worker from approximately December 2016 until on or about May 2017. **Exhibit A ¶ 26, 157-158; Exhibit S ¶¶ 8-9.**

78. Plaintiff Suthayabhorn was also required to spend a significant portion of his work day performing non-tip duties such as dishwashing, cutting vegetables, cutting chicken and meats, bringing up all sorts of items from the basement for the owners, stocking items in the basement, cleaning the restaurant, the basement, the kitchen, the sidewalk, the walls and the floors, twisting and tying up cardboard boxes, taking out the garbage, going to the supermarket and shopping for items, preparing food, cleaning, sweeping and mopping, cooking rice, preparing sauces, cleaning rat droppings, repairing the bathroom and taking out the mousetraps. **Exhibit A ¶ 6; Exhibit S ¶ 9.**

79. Plaintiff Suthayabhorn's work did not require discretion or independent judgment. **Exhibit A ¶ 162; Exhibit S ¶ 10.**

80.     From approximately December 2016 until on or about May 2017, Plaintiff

Suthayabhorn worked as a delivery worker from approximately 11:00 a.m. until on or

about 11:00 p.m. to 12:00 a.m., 5 days a week (typically 60 to 65 hours per week).

**Exhibit A** ¶ 164; **Exhibit S** ¶ 14.

81.     Throughout Plaintiff Suthayabhorn's entire employment, Defendants paid him his

wages in cash. **Exhibit A** ¶ 165; **Exhibit S** ¶ 15.

82.     From approximately December 2016 until on or about May 2017, Defendants

paid Plaintiff Suthayabhorn a fixed salary of $60 per day. **Exhibit A** ¶ 166; **Exhibit S**

¶ 16.

83.     Plaintiff Suthayabhorn's pay did not vary even when he was required to stay later

or work a longer day than his usual schedule. **Exhibit A** ¶ 167; **Exhibit S** ¶ 19.

84.     Defendants did not provide Plaintiff Suthayabhorn with any written notice of his

rate of pay, his employer's regular pay day and other information required by NYLL §

195(1). **Exhibit A** ¶ 176; **Exhibit S** ¶ 25.

85.     Further, Defendants did not provide Plaintiff Suthayabhorn with any document or

other statement accurately accounting for all of his actual hours worked, or setting forth

the rate of pay for all his hours worked. **Exhibit A** ¶ 175; **Exhibit S** ¶ 22.

86.     No notification, either in the form of posted notices or others means, was ever

given to Plaintiff Suthayabhorn regarding overtime and minimum wages under the FLSA

and NYLL. **Exhibit A** ¶ 174; **Exhibit S** ¶ 24.

## Plaintiffs are entitled to Judgment by Default

87.    It is well settled that Defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well- pleaded allegations against the defaulting party") (citation omitted).

88.    Defendants have failed to file an answer or otherwise respond to the Complaint, despite the time to do so having expired. Thus, Plaintiffs' allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiffs' right to default judgment.

89.    Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" Id. (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993)).

90.    Plaintiffs maintain that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiffs have put forward, damages, including back pay, liquidated damages, prejudgment interest, should

15

be awarded in the amount of $1,227,512.47, and attorneys' fees and costs should be awarded in the amount of $5,106.00.

**Plaintiffs' Damages Calculation**

91.     Annexed as **Exhibit T** is a chart setting out the damages Plaintiffs are entitled to recover.

92.     In the damages chart, the Plaintiffs' wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiffs' affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiffs' affidavits. Then there is a column that calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiffs (the "Credited Weekly Pay") for each period, then dividing that amount by 40 hours. The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculations later in the chart. The number of days each week in that period for which the Plaintiffs worked in excess of 10 hours per day (Spread of Hours) is also included ("No. of SOH Days Per Wk in Period").

93.     *Calculations within the Chart* – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiffs should have been paid per week during each pay period. The actual formula used in this column is as follows:((greater of minimum wage or

calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) *

(Hours Per Week over forty, if any)).

94.    The chart therefore automatically determines whether the effective calculated

base rate of pay falls below the minimum wage, and if it does, it discards it. If it does not,

it uses it for the subsequent calculations (as the Plaintiffs are entitled to earn at least the

minimum wage). The chart then automatically calculates what the hours should have

been compensated at under the base rate of pay up to the first 40 hours of work per week,

and then at time-and-a-half pay for any hours over 40. The Chart then subtracts the

amount actually paid to Plaintiffs (the "Credited Weekly Pay") and then derives the

"Underpayment per Week." This number is then multiplied by the number of weeks in

each period and derives the total damages due for unpaid minimum wages and overtime

for each period ("Unpaid Wages & OT"). The Chart then applies the liquidated damages

provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq.

Damages on Wages & OT," which equal 100% of the "Unpaid Wages and OT" for each

pay period.

95.    The unpaid spread of hours pay ("Unpaid Spread of Hours (SOH) Pay") is

derived by multiplying (the number of SOH days per week) * (the number of weeks per

period) * (the minimum wage). The liquidated damages on SOH pay are all calculated at

the rate of 100%.

96.    The legal basis for the damages calculations within the chart are set out below.

**Back Pay**

97.     At all times relevant to the FLSA claims in this action, the minimum wage rate

under the FLSA was $7.25 per hour. Employees must be paid one-and-one half times

their regular rate for each hour worked over forty (40) hours worked in a week. 29 U.S.C.

§ 207(a)(1). As of December 31, 2013, the New York Minimum wage rate increased to

$8.00 per hour; it further increased to $8.75 per hour as of December 31, 2014; it further

increased to $9.00 per hour as of December 31, 2015; it further increased to $11.00 per

hour as of December 31, 2016; it further increased to $13.00 per hour as of December 31,

2017. New York's rules on overtime explicitly incorporate those of the FLSA, and thus

require pay at one-and-one-half times the regular normal rate for each hour over forty

hours worked in a week. 12 N.Y.C.R.R. § 142-2.2.

98.     The onus is on the employer to maintain proper records of employees' hours

worked, 29 U.S.C. § 211(c). "In a FLSA case, in the absence of rebuttal by [D]efendants,

[P]laintiffs' recollection and estimates of hours worked are presumed to be correct." *Zeng

Liu v. Jen Chu Fashion Corp*, 2004 U.S. Dist. LEXIS 35, *8 (S.D.N.Y. 2004) (the court

accepted the Plaintiffs' estimates of hours worked).

> An employee has carried out his burden [of production under the
> FLSA] if he proves that he has in fact performed work for which he
> was improperly compensated[,] and if he produces sufficient
> evidence to show the amount and extent of that work by just and
> reasonable inference. The burden then shifts to the employer to
> come forward with evidence of the precise amount of work
> performed or with evidence to negative the reasonableness of the
> inference to be drawn from the employee's evidence. If the employer
> fails to produce such evidence, the court may then award damages
> to the employee, even though the result be only approximate. *Id.*
> (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88
> (1946), and other cases).

99.     Here, Plaintiffs were not paid minimum wage compensation at the lawful rate. Rather, Plaintiffs Juarez, Rodriguez, Badillo, Guadalupe, Castillo and Suthayabhorn received a fixed weekly salary throughout their entire employment with Defendants that did not vary depending on whether they had worked in excess of ten hours in a day or their scheduled hours. *See* **Exhibit T**.

100.     Where an employee receives a straight weekly salary, there is a rebuttable presumption under the FLSA that the salary covers 40 hours worked. Therefore, to determine the regular rate, the weekly salary is divided by 40 hours. Moon v. Kwon, 248 F.Supp.2d 201, 207-08 (S.D.N.Y. 2002); Giles v. City of New York, 41 F.Supp.2d 308, 317 (S.D.N.Y. 1999); Berrios v. Nicholas Zito Racing Stable, Inc., 849 F.Supp.2d 372, 385 (E.D.N.Y. 2012).

101.     Further, under the New York Hospitality Industry Wage Order, the regular rate for a restaurant employee who is not paid on an hourly basis is determined by "dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 NYCRR §146-3.5 (2013).

102.     Accordingly, to determine the Plaintiffs' unpaid minimum wages, Plaintiffs' regular rate is determined by dividing their weekly salary by 40. Then the regular rate is multiplied by 1.5 to determine the overtime rate the Plaintiffs should have received (if applicable).

103.     Plaintiff Juarez is owed $133,109.88 in unpaid minimum and overtime wages and $4,320.00 in withheld tips. As of September 13, 2018, Plaintiff Juarez is entitled to $30,585.58 in prejudgment interest on wages and overtime. See **Exhibit T.**

104.     Plaintiff Rodriguez is owed $15,443.25 in unpaid minimum and overtime wages and $980 in withheld tips. As of September 13, 2018, Plaintiff Rodriguez is entitled to $7,144.15 in prejudgment interest on wages and overtime. See **Exhibit T.**

105.     Plaintiff Badillo is owed $58,855.63 in unpaid minimum and overtime wages, and $3,240.00 in withheld tips. As of September 13, 2018, Plaintiff Badillo is entitled to $22,546.58 in prejudgment interest on wages and overtime. *See* **Exhibit T**.

106.     Plaintiff Guadalupe is owed $168,899.25 in unpaid minimum and overtime wages, and $4,530.00 in withheld tips. As of September 13, 2018, Plaintiff Guadalupe is entitled to $53,859.92 in prejudgment interest on wages and overtime. *See* **Exhibit T.**

107.     Plaintiff Castillo is owed $61,685.00 in unpaid minimum and overtime wages, and $2,660.00 in withheld tips. As of September 13, 2018, Plaintiff Castillo is entitled to $11,073.59 in prejudgment interest on wages and overtime. *See* **Exhibit T.**

108.     Plaintiff Suthayabhorn is owed $11,168.75 in unpaid minimum and overtime wages, and $460.00 in withheld tips. As of September 13, 2018, Plaintiff Suthayabhorn is owed $1,555.55 in prejudgment interest on wages and overtime. *See* **Exhibit T.**

## **Spread of Hours Pay**

109.     Plaintiffs are also entitled to "spread-of-hours" pay under the New York spread-of-hours regulation, which requires employers to pay workers for an additional hour of overtime-rate pay beyond their regular pay when the workday is more than ten (10) hours. 12 N.Y.C.R.R. § 146-1.6; Angamarca v. Pita Grill 7 Inc., 2012 U.S. Dist. LEXIS 108322, *16-17, 2012 WL3578781 (S.D.N.Y. Aug. 2, 2012).

110.     As set out above, Plaintiffs Juarez, Rodriguez, Badillo, Guadalupe, Castillo, and Suthayabhorn regularly worked more than ten hours per day throughout their entire employment.

111.     Plaintiff Juarez is entitled to $11,808.00 in unpaid spread of hours pay. As of September 13, 2018, Plaintiff Juarez is entitled to $2,664.52 in prejudgment interest on the unpaid spread of hours pay. *See* **Exhibit T.**

112.     Plaintiff Rodriguez is entitled to $1,783.75 in unpaid spread of hours pay. As of September 13, 2018, Plaintiff Rodriguez is entitled to $825.43 in prejudgment interest on the unpaid spread of hours pay. *See* **Exhibit T.**

113.     Plaintiff Badillo is entitled to $6,442.50 in unpaid spread of hours pay. As of September 13, 2018, Plaintiff is entitled to $2,457.41 in prejudgment interest on the unpaid spread of hours pay. *See* **Exhibit T.**

114.     Plaintiff Guadalupe is entitled to $15,048.00 in unpaid spread of hours pay. As of September 13, 2018, Plaintiff is entitled to $4,624.23 in prejudgment interest on the unpaid spread of hours pay. *See* **Exhibit T.**

115.     Plaintiff Castillo is entitled to $5,121.00 in unpaid spread of hours pay. As of September 13, 2018, Plaintiff is entitled to $937.47 in prejudgment interest on the unpaid spread of hours pay. *See* **Exhibit T.**

116.     Plaintiff Suthayabhorn is entitled to $1,225.00 in unpaid spread of hours pay. As of September 13, 2018, Plaintiff is entitled to $171.03 in prejudgment interest on the unpaid spread of hours pay. *See* **Exhibit T.**

**<u>Three Year Statue of Limitations Under FLSA</u>**

117.     Under the FLSA, when the underpayment by the employer is willful, the

limitations period increases from two (2) to three (3) years. 29 U.S.C. § 255(a).

118.     Willfulness under the FLSA means the employer "knew or showed reckless

disregard for the matter of whether [the employer's] conduct was prohibited by the

statute," *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *Damassia v.*

*Duane Reade, Inc.*, 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005)

(willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of

the existence of the FLSA and its overtime requirements."). Willfulness is also

established when an employer fails to investigate whether its compensation policy was

legal. *See Hardrick v. Airway Freights Systems, Inc.*, 63 F. Supp. 2d 898, 904 (N.D.Ill.

1999); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003), *aff'd*, 126 S.Ct. 514

(2005) (upholding the three-year statute of limitations because employer was on

notice of FLSA requirements but "took no affirmative action to assure compliance" with

them).

119.      In the present matter, Defendants were aware, or should have been aware, of the

existence of the FLSA and its overtime requirements. However, the Defendants knew or

disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if

the Defendants did not know of the FLSA, the Defendants' actions are still willful

because the Defendants failed to investigate whether their compensation policy was legal.

*See Hardrick*, 63 F. Supp. 2d at 904.

120.     Moreover, the Defendants failed to post the required information concerning the

minimum wage laws, paid the Plaintiffs in cash, and had no system for recording, or even

having Plaintiffs record, their hours. This deliberate decision to disregard both FLSA and

New York law, as well as Defendants' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law. *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages")(internal quotations omitted).

121.   As Plaintiffs can establish that Defendants' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA, i.e., starting from March 26, 2015, three years before the complaint was filed. *See, e.g., Decraene v. Neuhaus (U.S.A.), Inc.*, 2005 U.S. Dist. LEXIS 10836 at *23-4 (S.D.N.Y. 2005). Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness. N.Y. Labor Law § 663(3). Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA. *See Godlewska v. Human Dev. Assoc., Inc.*, 2006 U.S. Dist. LEXIS 30519, at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiffs' employment, which was less than six years from the filing date.

## Wage Notice and Statement Violations

122.   Defendants never provided Plaintiffs with annual notices of their wages, or a wage statement, as required by NYLL §§ 195(1), 195(3). Plaintiffs are therefore each entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000 each Plaintiff and $60,000 total for all Plaintiffs.

## Liquidated Damages

123.   Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory.

See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defendants have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. 29 U.S.C. § 216(b).

124.    Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." *Wei*, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

125.    Given the uncontroverted evidence of Defendants' lack of good faith, Plaintiffs are entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for any subsequent unpaid minimum and overtime wages.

126.    Plaintiffs are entitled to liquidated damages in the amount of $449,161.75 on their unpaid minimum and overtime wages. *See* **Exhibit T**.

127.    Plaintiffs are entitled to liquidated damages in the amount of $41,428.25 on their spread of hours wages. *See* **Exhibit T**.

### Attorneys' Fees and Costs

128.    The FLSA and the New York Labor Law both contain fee-shifting provisions for

actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in
addition to any judgment awarded to the Plaintiffs or Plaintiffs, allow a reasonable
attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law §
663(1) ("[An employee] may recover. . . costs and such reasonable attorney's fees as may
be allowed by the court").

129.    Plaintiffs incurred costs and attorneys' fees in pursuing this action, and seek an
award of reasonable attorney's fees and costs.

130.    The fees and costs are a total of $5,106.50 including a filing fee of $400.00 and
fees associated with serving the Defendants with the summons and complaint.

131.    A breakdown of attorneys' fees and costs incurred in filing the Complaint and
seeking default, in the form of this firm's standard billing sheet is attached hereto as
**Exhibit U.**[1]

132.    The attorneys who worked on the case are Michael Faillace and Haleigh Amant:

        i. Michael Faillace is the Managing Member of Michael Faillace &
Associates, P.C., and has been in practice since 1983. From 1983 to
2000, he was in-house Employment Counsel with International
Business Machines Corporation (IBM). He taught employment
discrimination as an Adjunct Professor at Fordham University School
of Law since 1992 and at Seton Hall University Law School from 1995
to 1998, and he is a nationally-renowned speaker and writer on
employment law. He also is the author of the ADA, Disability Law

---

[1] The initials PL in the billing sheet refer to work done by paralegals at the firm.

Deskbook: The Americans with Disabilities Act in the Workplace,

published by Practicing Law Institute (PLI), and other employment law

publications and presentations. His regular billing rate of $450 per hour

is reflected in **Exhibit U.**

ii. Haleigh Amant is an associate at Michael Faillace & Associates, P.C.

Since graduating law school in 2017 from the George Washington

University Law school, she has been practicing strictly employment law

and representing employees in wage and hour disputes. Her work is billed

at $250 per hour and indicated by the initials "HA."

### Conclusion

133.    Based on the above information and exhibits, Plaintiffs assert the record supports a

judgment against the Defendants in favor of Plaintiffs in the total amount of $1,227,512.47 for

unpaid minimum and overtime wages damages, spread of hours damages, liquidated damages,

prejudgment interest and other claims. Prejudgment interest continues to run and should

ultimately be computed through the date judgment is entered.

134.    Additionally, Plaintiffs are entitled to $5,106.00 in attorneys' fees and costs.

135.    As shown herein, no inquest is necessary when, as in the present case, the Court

has before it the proper measure of damages and evidence submitted by the Plaintiffs that allows

damages to be calculated with reasonable certainty.

136.    No part of the judgment sought has been paid.

137.    Sufficient definitive information and documentation is provided such that the

amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiffs' declarations accompanying these motion papers.

138.    Plaintiffs also make a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

139.    Plaintiffs also request that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

140.    The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

141.    A proposed form of judgment is attached as **Exhibit V.**

142.    For the reasons stated above and in the accompanying declarations and exhibits, the Plaintiffs' motion for a default judgment should be granted.

143.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  New York, New York
        September 17, 2018

                                        /s/ Michael Faillace
                                        Michael Faillace, Esq.